# EXHIBIT A

# NOTE
## (FIXED RATE, AMORTIZING)

May 13, 2022                          ST. LOUIS                          MO
                                      *[City]*                           *[State]*

### PRINCIPAL LOAN TERMS

The terms below are applicable to this Note:

*Property Address(es):* SEE EXHIBIT "A" ATTACHED FOR PROPERTY LIST, ST. LOUIS, MISSOURI 63106

*Lender:* PARK PLACE FINANCE, LLC, A TEXAS LIMITED LIABILITY COMPANY

*Borrower:* HUDSON & MCKEE REAL ESTATE, LLC, A MISSOURI LIMITED LIABILITY COMPANY

*Principal Amount:* $ 1,897,800.00

*Initial Interest Rate:*      6.625 % per annum.

*Monthly Payment Date:* The   1st   day of each month.

*Initial Payment Date:* July 01, 2022

*Monthly Payment Amount:* $ 12,151.82

*Maturity Date:* June 01, 2052

*Prepayment Premium Percentage:* The applicable percentage set forth below:

   5.000 % if the Prepayment occurs prior to the first anniversary of the date of this Note.

   5.000 % if the Prepayment occurs on or after the first anniversary of the date of this Note but prior to the second anniversary of the date of this Note.

   5.000 % if the Prepayment occurs on or after the second anniversary of the date of this Note but prior to the third anniversary of the date of this Note.

   5.000 % if the Prepayment occurs on or after the third anniversary of the date of this Note but prior to the fourth anniversary of the date of this Note.

   5.000 % if the Prepayment occurs on or after the fourth anniversary of the date of this Note but prior to the fifth anniversary of the date of this Note.

*Address for Payments:*         7000 N MOPAC SUITE 200-41
                                *[Street Address]*
                AUSTIN           TX                      78731
                *[City]*         *[State]*               *[ZIP code]*

*Loan Number:* 103892

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay the Principal Amount, plus interest, to the order of the Lender. I agree to make all payments under this Note by auto-debited Automated Clearing House (ACH) payment in accordance with the written instructions provided by Lender to me from time to time, unless a different payment method is approved in writing by Lender.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full Principal Amount has been paid. I will pay interest at the Interest Rate.

For so long as any default under this Note, the Security Instrument (as defined below) or any related document (collectively, the "Loan Documents") is continuing, the outstanding principal balance of this Note, interest due and payable and any other amounts due and payable under the Loan Documents, will accrue interest at a rate per annum equal to the lesser of (a) thirteen percent (13%) above the interest rate otherwise provided for in this Note and (b) the maximum rate permitted by law (the "Default Rate"). I will pay interest at the foregoing default rate immediately upon demand, which demand may be made as frequently as the Note Holder determines. Interest at the Default Rate will be payable in addition to the late charge described in Section 6(A) of this Note.

Interest at the rates provided for in this Note will be computed on the basis of a three hundred sixty (360) day year for the actual number of days elapsed during the period for which interest is calculated. I acknowledge and agree that the calculation of interest on the basis described in the immediately preceding sentence will result in the accrual and payment of interest in amounts greater than those that would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within thirty (30) days prior to the date it is due will be deemed to be paid on such due date. All other payments received by the Note Holder will be applied as of the date the payment is received by the Note Holder.

3. **PAYMENTS**

   (A) **Time and Place of Payments**

   I will pay principal and interest by making a payment every month.

   I will make my monthly payment on the Monthly Payment Date beginning on the Initial Payment Date. I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Note and the other Loan Documents. Each monthly payment will be applied to interest, principal and other amounts due under the Loan Documents as provided in the Security Instrument. If, on the Maturity Date, I still owe amounts under this Note and the other Loan Documents, I will pay those amounts in full on that date.

   I will make my monthly payments at the Address for Payments or at a different place if required by the Note Holder.

   (B) **Amount of My Monthly Payments**

   My monthly payment will be in the Monthly Payment Amount.

   (C) **Escrow Items**

   In addition to the payment of principal and interest described above, each month until this Note is paid in full, I will make escrow payments for taxes, assessments, insurance and other items as described in the Security Instrument.

4. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal before it is due is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

The Note Holder will apply my Prepayments as provided in the Security Instrument. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by the Note Holder after the acceleration of the loan), I will pay to the Note Holder (a) the accrued and unpaid interest on the amount of principal being prepaid through and including the date of such Prepayment and (b) any applicable Prepayment Premium (as defined below). Notwithstanding the foregoing, no Prepayment Premium will be payable on a Prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the Property or as set forth in Section 5 of this Note. The "Prepayment Premium" on any Prepayment in full of the Note

will be an amount equal to the applicable Prepayment Premium Percentage multiplied by the outstanding principal balance of the Note immediately prior to the Prepayment. The "Prepayment Premium" on any partial Prepayment of the Note will be an amount equal to the applicable Prepayment Premium Percentage multiplied by the aggregate amount of the Prepayments made in any Annual Period in excess of twenty percent (20%) of the original Principal Amount. An "Annual Period" means a period of twelve (12) months commencing on and including the date of this Note and each twelve (12) month period commencing on and including an anniversary of the date of this Note, until payment in full of this Note.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal Amount or by making a direct payment to me. If a refund reduces the Principal Amount, the reduction will be treated as a partial Prepayment that will not subject to a Prepayment Premium.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of five calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3% of that portion of the installment of principal and interest that is overdue. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees, property inspection and valuation fees, and all other special servicing fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given in the manner set forth in the Security Instrument.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any direct or indirect Interest in the Property is sold or transferred (or if Borrower is not a natural person and a direct or indirect beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. INDEMNIFIED TAXES

Any payments by or on account of any of my obligations under any Loan Document will be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the amount payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable under the Loan Documents) the Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on the Note Holder. I will promptly indemnify the Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I will promptly deliver evidence satisfactory to the Note Holder of any payments made pursuant to this Section 11. I will also pay all documentary, recording, filing or similar taxes that arise with respect to the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

HUDSON & MCKEE REAL ESTATE,
LLC, A MISSOURI LIMITED
LIABILITY COMPANY

By: _____ (Seal)
MAUREEN WOOTEN,                -Borrower
MANAGING MEMBER

*[Sign Original Only]*

Borrower's Notice Address: 3155 BRANTNER PLACE, ST. LOUIS, MISSOURI 63106

Email: