# EXHIBIT B

After Recording Return To:

PARK PLACE FINANCE, LLC

7000 N. MOPAC, SUITE 200-41

AUSTIN, TEXAS 78731

LOAN NUMBER: 103892

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in other sections of this Security Instrument.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MAY 13, 2022 , together with all Riders to this document.
**(B) "Borrower"** is HUDSON & MCKEE REAL ESTATE, LLC, A MISSOURI LIMITED LIABILITY COMPANY .
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is PARK PLACE FINANCE, LLC . Lender is a limited liability company organized and existing under the laws of TEXAS . Lender's address is 7000 N. MOPAC, SUITE 200-41, AUSTIN, TEXAS 78731 . Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is TRUE TRUSTEE SERVICES, LLC .
**(E) "Note"** means the promissory note signed by Borrower and dated MAY 13, 2022 .
 The Note states that Borrower owes Lender ONE MILLION EIGHT HUNDRED NINETY-SEVEN THOUSAND EIGHT HUNDRED AND 00/100
Dollars (U.S. $ 1,897,800.00 ) (the "**Initial Principal Amount**") plus interest and other amounts secured by this Security Instrument.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 1, 2052 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Condominium Rider          ☐ Planned Unit Development Rider
☒ Entity Borrower Rider       ☐ Vacant Property Rider
☐ Other(s) [specify] _____

SLP SECURITY INSTRUMENT – MISSOURI
AD0920                                                                    *(page 1 of 24 pages)*

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Escrow Items"** means those items that are described in Section 3.

**(L)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(P) "Loan Documents"** means this Security Instrument, the Note, all Riders and all certificates and other documents given by Borrower in connection with the Loan and any Guaranty given in connection with the Loan.

**(Q) "Guarantor"** means any person or entity that guaranties Borrower's obligations under the Loan Documents.

**(R) "Note Holder"** means the Lender or anyone who takes the Note by transfer and who is entitled to receive payments under the Note.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under the Loan Documents. For this purpose, Borrower irrevocably grants, bargains, sells, conveys and confirms to Trustee, in trust, with power of sale, the following described property located in the

CITY of ST. LOUIS :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

### SEE EXHIBIT "A" LEGAL DESCRIPTION ATTACHED HERETO
### AND MADE A PART HEREOF FOR ALL PURPOSES

which currently has the address of *SEE EXHIBIT "A" ATTACHED HERETO FOR LIST OF PROPERTIES*

[Street]

ST. LOUIS , Missouri 63106 ("Property Address"):
[City]     [Zip Code]

**SLP SECURITY INSTRUMENT – MISSOURI**
**AD0920**

*(page 2 of 24 pages)*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.

Without limitation, the property shall include the following items now or hereafter attached to the Property to the extent they are fixtures: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, including replacements and additions thereto.

All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. Dollars by auto-debited Automated Clearing House (ACH) payment in accordance with the written instructions provided by Lender to Borrower from time to time, unless a different payment method is approved in writing by Lender.

Payments are deemed received by Lender when cleared funds are irrevocably delivered to Lender's account or if payment by check or money order is approved in writing by Lender, when such check or money order is received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. Lender need not pay interest on any unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements under the Loan Documents.

**2. Application of Payments or Proceeds.** Notwithstanding anything to the contrary in any other Loan Document, except as otherwise described in this Section 2, funds delivered to Note

SLP SECURITY INSTRUMENT – MISSOURI
AD0920

Holder in connection with any payment or prepayment shall be applied in the following order of priority: (a) first, interest then due and payable, which shall include all interest accrued and unpaid on the principal amount of any prepayment through the date of such prepayment; (b) second, to any principal amount of the Loan due and payable; (c) third, amounts due under Section 3 of this Security Instrument; (d) fourth, to any amounts (other than amounts described in any other clause of this paragraph) then due and payable under the Loan Documents, including late charges; (e) fifth, any Prepayment Premium, as that term is defined on the Principal Loan Terms page of the Note, due and payable on the principal amount of any prepayment, including any costs and expenses of Note Holder in connection with such prepayment; and (f) sixth, to the remaining principal balance of the Loan. Prepayments of principal shall be applied to the scheduled installments of principal on the Loan in reverse chronological order. Notwithstanding the foregoing, during the continuance of any default under any Loan Document, any payment of principal, interest and other amounts payable under the Loan Documents from whatever source (including rents collected by Note Holder from tenants and proceeds from the foreclosure sale of the Property) may be applied by Note Holder among principal, interest and other amounts payable in such order, priority and proportions as Note Holder determines.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds to the payment of Escrow Items. The amount of Funds Lender may collect in any calendar month shall not exceed an amount sufficient to pay all applicable Escrow Items by the 30th day prior to the date such Escrow Items become due, assuming equal subsequent monthly collections of Funds. If at any time Lender determines that the Funds will not be sufficient to pay Escrow Items as aforesaid, Lender shall notify Borrower in writing that a deficiency exists and adjust the amount of Funds collected to an amount that Lender estimates is sufficient to make up the deficiency. If at any time Lender determines that the Funds held by Lender plus subsequent monthly collections of Funds will exceed the amount necessary to pay Escrow Items as aforesaid, Lender shall notify Borrower in writing that a surplus exists (or will occur) and adjust the amount of Funds collected to an amount that Lender estimates is sufficient to eliminate the surplus. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in a banking institution selected by Lender. Lender shall apply the Funds to pay Escrow Items prior to the date any Escrow Items become delinquent. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien that attaches to the Property after the date hereof or that was not disclosed in Lender's title insurance policy for the Loan (other than a lien for property taxes not yet due and payable) unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; or (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded. If Lender determines that any part of the Property is subject to a lien that attaches to the Property after the date hereof or that was not disclosed in Lender's title insurance policy for the Loan (other than a lien for property taxes not yet due and payable), Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4. In addition, Lender may require Borrower to deposit funds with Lender an amount determined by Lender as security for the release of the lien. Lender shall not be required to pay Borrower any interest or earnings on such funds. If Borrower fails to obtain a full release of the lien, Lender may apply such funds towards the payment of the obligation securing the lien. Upon payment in full of the obligation secured by the lien or payment

SLP SECURITY INSTRUMENT – MISSOURI
AD0920                                                                                      *(page 5 of 24 pages)*

in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any remaining portion of such funds held by Lender.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property and Rent Loss Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels), on the terms and for the periods that Lender requires and shall otherwise be satisfactory to Lender. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Borrower shall maintain insurance against rent loss in such amounts, with such maximum deductibles and for such periods required by Lender. Currently, Lender's rental loss insurance requirements include business income or rental loss insurance, written on an "Actual Loss Sustained Basis" (i) with loss payable to Lender; (ii) covering all risks required to be covered by the insurance provided for in the property insurance policy required by Lender and (iii) in an amount equal to one hundred percent (100%) of the aggregate projected gross income less non-continuing expense from the operation of the Property for a period of at least six (6) months after the date of the casualty.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies and renewals of insurance policies required by the Loan Documents shall be (i) in the form and with the terms required by Lender; (ii) in such amounts, with such maximum deductibles and for such periods required by Lender; and (iii) issued by insurance companies satisfactory to Lender. Borrower acknowledges that Lender's insurance requirements may change from time to time.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally

assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Lender shall determine whether insurance proceeds shall be applied (i) to restoration or repair of the Property or (ii) to the sums secured by this Security Instrument. If Lender determines to apply insurance proceeds to the restoration or repair of the Property, then during such restoration or repair, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If Lender determines to apply insurance proceeds to the sums secured by this Security Instrument, such insurance proceeds shall be applied to such sums in such order and priority as determined by Lender, whether or not the sums are then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Operation of the Property.** Borrower at all times shall continuously (i) engage in the businesses of ownership, leasing, maintenance, management and operation of the Property, (ii) operate the Property as a residential rental property, and (iii) own or lease all equipment, fixtures and personal property that are necessary to operate the Property. Borrower represents, warrants and covenants that (A) the purpose of the Loan is for business and/or commercial purposes only, (B) the Loan is not for personal, family or household use, (C) the Property is not used nor will be leased to or occupied by (1) Borrower, (2) any affiliate of Borrower, (3) any holder of a direct or indirect equity interest in Borrower or any such affiliate, (4) any officer, director, executive employee or manager of any person or entity described in the foregoing clauses (1) – (3) or (5) any family member (including spouse, siblings, ancestors and lineal descendants) of any person or entity

described in the foregoing clauses (1) – (4) (the persons and entities referred to in the foregoing clauses (1) – (5) are collectively referred to herein as "Prohibited Persons") and (D) the Property is an investment to be held for future appreciation and income and will be a rental property. Borrower shall not (I) convert any individual dwelling units or common areas to commercial use, or convert any common area or commercial use to individual dwelling units, (II) initiate or acquiesce in a change in the zoning classification of the Property, (III) establish any condominium or cooperative regime with respect to the Property or (IV) subdivide the Property, in each case unless Lender has agreed thereto in writing.

      **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower represents that the Property is in a good, safe and habitable condition and repair, and free of and clear of any material damage or waste. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

      Borrower shall not make (or permit any tenant to make) any structural alterations to the Property (including, without limitation, any alterations to the roof of the Property) that would reasonably be expected to have a material adverse effect on the use, leasing, operation, value or marketability of the Property (a "Material Adverse Effect"). Borrower shall not abandon the Property nor take any action that would reasonably be expected to invalidate any insurance coverage required by the Loan Documents (and Borrower shall promptly correct any such actions of which Borrower becomes aware).

      Lender or its agent may make reasonable entries upon and inspections of the Property. Subject to the rights of tenants, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

      **8. Accuracy of Information.** Borrower shall be in default if, (a) during the Loan application process, Borrower, any Guarantor or any persons or entities acting at the direction of Borrower or any Guarantor or with Borrower's or any Guarantor's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or (b) any certification, representation or warranty made by Borrower or any Guarantor in any Loan Document is false, incorrect or misleading in any material respect. Material representations include, but are not limited to, representations concerning the operation of the Property as a rental property and the occupancy of the Property by Prohibited Persons.

      **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy,

probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien on the Property; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, Lender shall determine whether Miscellaneous Proceeds shall be applied (i) to restoration or repair of the Property or (ii) to the sums secured by this Security Instrument. If Lender determines to apply Miscellaneous Proceeds to the restoration or repair of the Property, then during such restoration or repair, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. If Lender determines to apply Miscellaneous Proceeds to the sums secured by this Security Instrument, such Miscellaneous Proceeds shall be applied to such sums in such order and priority as determined by Lender, whether or not the sums are then due, with the excess, if any, paid to Borrower.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, in such order and priority as determined by Lender, whether or not the sums are then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, in such order and priority as determined by Lender, whether or not the sums are then due, with the excess, if any, paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

For purposes of determining the fair market value of the Property pursuant this Section 11, value shall be given only to "real property, permanent structures and the components of permanent structures" within the meaning of Treas. Reg. § 1.856-3(d) and no value shall be given to any other property no matter how labeled under local law.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the

SLP SECURITY INSTRUMENT – MISSOURI
AD0920
*(page 11 of 24 pages)*

sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, valuation fees, servicing fees and special servicing fees, costs and expenses.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument, the Note and the other Loan Documents must be in writing, which may include electronic mail.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail to Borrower's physical address or when actually delivered to Borrower's notice address if sent by electronic mail or by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be Borrower's physical address and email address set forth in the Note unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All

SLP SECURITY INSTRUMENT – MISSOURI
AD0920

rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any direct or indirect legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any direct or indirect Interest in the Property is sold or transferred (or if Borrower is not a natural person and a direct or indirect beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. No Right to Reinstate.** Borrower hereby waives any and all rights of reinstatement to the fullest extent permitted by Applicable Law.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer and the address to which payments should be made. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Acceleration; Remedies. If a default under any Loan Document occurs, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument and may invoke the power of sale, any other remedies described in this Security Instrument and any remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to, all fees and expenses incurred in connection with the foreclosure of this Security Instrument, the cost of taking control of and managing the Property and collecting the Rents, which fees and expenses may include, but are not limited to, attorney's fees, receiver's fees, trustee's fees, liquidator's fees, conservator's fees, premiums on receiver's or other bonds, costs of inspection of the Property, costs of valuation of the Property, property management fees, repair and maintenance costs and other expenses incurred in connection with the Property, all special servicing fees of Lender's servicer and reasonable compensation for the services of Lender, its agents and employees incurred in connection with any default under the Loan Documents. To the extent permitted by Applicable Law, Borrower hereby waives presentment, demand, protest or notice of any kind whatsoever. The Loan shall be accelerated and shall become immediately due and payable automatically upon the occurrence of any default described in**

SLP SECURITY INSTRUMENT – MISSOURI
AD0920

clause (e) of Section 26.

Without limiting the generality of the foregoing, upon and at all times following the occurrence of any default under the Loan Documents Lender shall have all rights and remedies available to it pursuant to the Loan Documents, and pursuant to Applicable Law, and Lender may take any action that Lender elects to protect and enforce its rights against Borrower or any Guarantor and in and to the Property and other collateral for the Loan, including but not limited to the following actions (in each case, to the extent permitted by Applicable Law): (a) institute proceedings for the complete foreclosure of this Security Instrument under any Applicable Law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner as Lender shall elect in its sole discretion; (b) institute proceedings for the partial foreclosure of this Security Instrument for the portion of the debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the debt, unimpaired and without loss of priority; (c) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents; (d) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents; (e) exercise any or all of Lender's rights and remedies under Section 28 and (f) apply any Funds or other amounts then deposited or held in escrow or otherwise by or on behalf of Lender pursuant to this Security Instrument or any other Loan Document to the payment of the principal, interest and other amounts due and payable in any order determined by Lender in its sole discretion.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Each of the rights, powers and remedies of Lender under the Loan Documents and Applicable Law and at equity shall be cumulative and not exclusive of any other such right, power or remedy. Lender's rights, powers and remedies may be pursued independently, singly, successively, together or otherwise, at such times and from time to time and as often and in such order as Lender may determine, to the fullest extent permitted by Applicable Law, without impairing or otherwise affecting any of the other such rights, powers and remedies of Lender. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument.

**23.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs.   Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.   Additional Representations, Warranties and Covenants.**   Borrower represents, warrants and covenants to Lender as follows:

(a)   **Compliance with Laws, Etc.** The Property and the ownership, leasing, management, maintenance and operation of the Property are in compliance, in all material respects, with Applicable Law, including without limitation laws pertaining to zoning, construction of improvements on the Property, fair housing, and requirements for equal opportunity, anti-discrimination.   Borrower shall cause the Property and the ownership, leasing, management, maintenance and operation of the Property to comply, in all material respects, with Applicable Laws. The Property has not been purchased with proceeds of any illegal activity.   There has not been committed by Borrower or by any other person or entity in occupancy of or involved with the operation, use or leasing of the Property any act or omission affording any governmental authority the right of forfeiture as against the Property or any part thereof.   To Borrower's knowledge, there is no evidence of any illegal activities on the Property and Borrower shall take reasonable measures to prevent any illegal activities from occurring at the Property.   Borrower is not in default or violation of and shall comply with any order, writ, injunction, decree or demand of any court or other governmental authority applicable to Borrower or the Property.

(b)   **Licenses and Permits.** Borrower maintains in full force and effect all certifications, permits, licenses, consents, authorizations and approvals required for the legal leasing, use, occupancy and operation of the Property as a residential rental property (collectively, "Permits"). Borrower has not failed to comply, in any material respect, with any term or condition of any such Permit. Borrower shall keep in full force and effect and shall comply all such Permits in all material respects.

(c)   **Compliance with Agreements and Property Documents**.   The Property is not subject to, and Borrower shall not agree or consent to, any agreement, instrument or restriction which would reasonably be expected to have a Material Adverse Effect. Borrower is not in default, in any material respect, in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any agreement or instrument relating to the Property and binding on Borrower or the Property, including without limitation any reciprocal easement agreement, declaration of covenants, conditions and restrictions and any condominium or home owner's association governing documents, rules and regulations (collectively, "Property Documents"). Borrower shall continue to observe and perform, in all material respects, each and every term to be observed or performed by Borrower pursuant to the terms of each Property Document.   Borrower shall enforce in a commercially reasonable manner the performance and observance of each Property Document, shall do all things reasonably necessary to preserve and to keep unimpaired its material rights thereunder and cause the Property to be operated in accordance therewith in all material respects.

(d)   **Leases.** The Property or, if the Property consists or more than one rental unit, each such rental unit, is subject to a written lease that (i) has a rental rate and terms consistent with existing local market rates and terms, (ii) is in compliance with all Applicable Law in all material respects and includes all disclosures required by Applicable Law and (iii) covers 100% of the square footage of the applicable Property, or a rental unit therein, as applicable (an "Eligible Lease").

SLP SECURITY INSTRUMENT – MISSOURI
AD0920

Borrower has delivered to Lender copies of each lease for the Property, each such lease is in full force and effect and not in default in any material respect and there are no oral agreements relating to any such lease. Borrower is the lessor under each Eligible Lease. Borrower shall not enter into any lease (including any renewal or extension of any existing lease) for the Property or a rental unit therein that is not an Eligible Lease. Borrower shall not grant to any tenant an option or other right to purchase an Interest in the Property, whether in the lease or another document or instrument.

(e)    **Tenants**. Each Eligible Lease for the Property, or a rental unit therein, is with a bona fide third-party lessee who satisfies each of the following criteria (an "Eligible Tenant"): (i) Borrower has verified, based on bona fide written documentation, that the tenant has sufficient financial resources to satisfy its obligations under such lease, (ii) the tenant is not subject to an ongoing bankruptcy or other insolvency proceeding as such date of initial screening of the tenant prior to its execution of a lease (or if not so initially screened, as of the date hereof) and (iii) the tenant is not a Prohibited Person. No person or entity (other than Borrower) has any possessory interest in the Property or any rental unit therein or right to occupy the same except for Eligible Tenants under and pursuant to Eligible Leases. Borrower shall not enter into any lease (including any renewal or extension of any existing lease) for the Property or a rental unit therein or permit the occupancy of the Property or any unit therein by any person or entity that is not an Eligible Tenant.

(f)    **Security Deposits**. Borrower maintains or causes to be maintained and shall continue to maintain or cause to be maintained security deposits for the Property in accordance with Applicable Law in all material respects. Upon Lender's written request during a default or upon any foreclosure of the Property or transfer in lieu thereof, Borrower shall deliver (or cause to be delivered) all security deposits to Lender for safe-keeping, and not for application against the Loan; provided, that to the extent any security deposits are forfeited by the applicable tenant pursuant to the terms of the applicable lease, Lender may apply such amounts against Borrower's obligations under the Loan Documents.

(g)    **Property Taxes, Insurance, Etc**. Borrower is not delinquent and shall remain, at all times, current in the payment of any taxes, assessments, charges, fines, impositions, Community Association Dues, Fees, and Assessments or insurance premiums attributable to the Property.

(h)    **Utilities and Public Access**. The Property has, and Borrower shall take all steps necessary to ensure that the Property continues to have rights of access to public ways and is served by electricity, water, sewer or septic system and storm drain facilities adequate to service the Property for its intended uses. All public utilities necessary or convenient to the full use and enjoyment of the Property are located either in the public right-of-way abutting the Property (which are connected so as to serve the Property without passing over other property) or in recorded easements serving the Property, and all roads necessary for the use of the Property for its intended purposes have been completed and dedicated to public use and accepted by the applicable governmental authorities.

(i)    **Ownership**. Borrower owns fee simple title to the Property and the Property is not subject to any ground lease. Borrower has not granted to any person any option or other right to purchase an Interest in the Property.

(j)    **Litigation**. Except as disclosed in writing to Lender, there are no orders, injunctions, decrees, judgments, actions, suits or proceedings (including proceedings regarding fair housing, anti-discrimination, or equal opportunity) at law or in equity by or before any court or other governmental authority pending or, to Borrower's knowledge, threatened, against or affecting

Borrower, any Guarantor or the Property. All information with respect to the same that has been provided to Lender by Borrower is true and complete in all material respects.

(k) **Bankruptcy**. Neither Borrower nor any Guarantor is (i) the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation; (ii) preparing or intending to be the subject of any such proceeding or dissolution or liquidation; (iii) the subject of any judgment unsatisfied of record or docketed in any court; or (iv) insolvent.

(l) **Further Assurances**. Promptly following request by Lender, Borrower shall, at its sole cost and expense: (i) execute and deliver, or cause to be executed and delivered, such documents, instruments, certificates, assignments and other writings, and do such other acts as Lender may request, to correct any defects or omissions in the Loan Documents, and to grant, evidence, preserve, perfect and protect the Property and Lender's liens thereupon and the priority thereof; and (ii) do and execute all and such further lawful and reasonable acts, conveyances and assurances for the better and more effective carrying out of the intents and purposes of the Loan Documents, as Lender may reasonably require from time to time.

(m) **No Joint Assessment**. Borrower shall not suffer, permit or initiate the joint assessment of the Property with (i) any other real property constituting a tax lot separate from the Property, or (ii) any portion of the Property which may be deemed to constitute personal property, or any other procedure whereby the lien of any taxes and assessments payable in respect of the Property or any penalties, interest or fees with respect thereto which may be levied against any such real or personal property shall be assessed or levied or charged to the Property.

**25. Information Requirements.** Borrower shall furnish or cause to be furnished to Lender the following reports, notices and other documents:

(a) **Reporting on Adverse Effects**. Within seven (7) days after Borrower obtains knowledge of the occurrence of any event or circumstance that has or would reasonably be expected to have a Material Adverse Effect, written notice thereof that includes the details of such event or circumstance and the action that Borrower is taking or proposes to take with respect thereto.

(b) **Default**. Within seven (7) days after Borrower obtains knowledge of any default under the Loan Documents, written notice setting forth the details of such default and the action that Borrower is taking or proposes to take to cure such default.

(c) **Property Taxes, Community Association Charges and Insurance**. Within seven (7) days of Lender's request therefor, copies of (a) any bills, statements or invoices for taxes, assessments, charges, fines, impositions, Community Association Dues, Fees, and Assessments or insurance premiums attributable to the Property and (b) evidence satisfactory to Lender of payment of any of the foregoing.

(d) **Leases**. Within seven (7) days after written request by Lender, copies of leases to the Property.

(e) **Other Information**. As soon as reasonably practicable after request by Lender, furnish or cause to be furnished to Lender in such manner and in such detail as may be reasonably requested by Lender, such evidence of compliance with the Loan Documents and such additional information, documents, records or reports as may be reasonably requested with respect to the Property or the conditions or operations, financial or otherwise, of Borrower and any Guarantor, including, without limitation, a periodic rent roll.

SLP SECURITY INSTRUMENT – MISSOURI
AD0920

**26. Additional Defaults.** In addition to the other defaults specified in the Loan Documents, the occurrence of any one or more of the following shall constitute a default under the Loan Documents:

(a)     any failure by Borrower to pay when due principal or interest on the Loan or any Funds and such failure shall continue for ten (10) days;

(b)     any failure by Borrower or any Guarantor to pay when due any amount (other than as set forth in the foregoing clause (a)) required to be paid by it under any Loan Document and such failure shall continue for fifteen (15) days;

(c)     if Borrower or any Guarantor fails to perform any of its non-monetary obligations under any Loan Document and such failure shall continue for thirty (30) days;

(d)     any failure by Borrower to maintain the insurance coverage required by Lender;

(e)     if any proceeding for bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation shall commence with respect to Borrower or any Guarantor;

(f)     if any Loan Document or any lien granted thereunder shall (except in accordance with its terms or pursuant to Lender's written consent), in whole or in part, terminate, cease to be effective or cease to be the legally valid, binding and enforceable obligation of the parties thereto;

(g)     the commencement of a forfeiture action or other similar proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's interest in, or the value or operation of, the Property; or

(h)     if Borrower or any of its affiliates breaches or defaults under any note, instrument or agreement relating to a loan owned by Note Holder, then such breach or default shall be a default under the Loan Documents.

**27. Debt Secured.** The debt secured by this Security Instrument shall include the entire unpaid principal amount of the Note plus (a) accrued but unpaid interest at the rate specified in the Note, including interest charged at the Default Rate specified in the Note, (b) any additional advances made by Lender to protect or preserve the Property or the lien or security interest created hereby on the Property including, but not limited to, payments on prior liens and repairs to the Property, (c) late charges, (d) prepayment fees and premiums, (e) taxes, charges or assessments which may be imposed upon the Property, (f) premiums on insurance policies covering the Property, (g) costs, fees and expenses incurred in enforcing the lien of this Security Instrument or the performance of Borrower's obligations hereunder or under the other Loan Documents, including, but not limited to, the expenses of any litigation to prosecute or defend the rights and liens created by this Security Instrument or any of Borrower's obligations hereunder or under the other Loan Documents, all fees and expenses incurred in connection with the foreclosure of this Security Instrument, the cost of taking control of and managing the Property and collecting the Rents, including amounts described in Section 22, (h) any amount, costs or charges to which Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority, (i) interest at the Default Rate specified in the Note on any judgment obtained by Lender and (j) all other amounts due from Borrower under this Security Instrument, the Note or any other Loan Document.

**28.    Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.**

(a)    **Collateral Assignment of Leases.**  In addition to the Property described in the grant of security above, the following items are added to the Property description, and shall also constitute the Property covered by this Security Instrument: all leases, lettings, licenses, concessions or other agreements (whether written or oral and whether now or hereafter in effect) pursuant to which any person or entity is granted a possessory interest in, or right to use or occupy all or any portion of the Property, and every modification, amendment or other agreement relating to such leases or other agreements entered into in connection with such leases or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (collectively, the "Leases"), together with any extension, renewal or replacement of same, and all right, title and interest of Borrower, its successors and assigns, therein and thereunder, together with all rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases, to perform all other necessary or appropriate acts with respect to such Leases as agent and attorney-in-fact for Borrower, and the right to make all waivers and agreements, to give and receive all notices, consents and releases, to take such action upon the happening of a default under any lease, including the commencement, conduct and consummation of proceedings at law or in equity as shall be permitted under any provision of any Lease or by any law, and to do any and all other things whatsoever which Borrower is or may become entitled to do under any such Leases, and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the rents to the payment and performance of the obligations under the Loan Documents.  If Lender gives notice of default to Borrower Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  Borrower hereby grants to Lender an irrevocable power of attorney, coupled with an interest, to take the foregoing actions and enter into the foregoing modifications, extensions, terminations and leases on behalf of Borrower if Borrower fails to do so within five (5) days of written demand by Lender.

(b)    **Assignment of Rents.**  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all the rents and revenues ("Rents") paid or accruing, of the Property, regardless of to whom the Rents of the Property are payable.  Borrower shall not otherwise assign, transfer or encumber in any manner the Leases or the Rents or any portion thereof.  Notwithstanding the foregoing, Borrower shall have a license to collect and use the Rents as the same become due and payable and to exercise all rights of the landlord under or with respect to the Leases, until Lender has given Borrower notice of default, at which time the license granted in this Section 28(b) shall be automatically revoked.  Borrower shall not collect any Rents more than thirty (30) days in advance of the date the same become due.  The assignment in this Section 28(b) shall constitute an absolute and present assignment of the Rents, and not an assignment for security, and the existence or exercise of Borrower's conditional license to collect the Rents shall not operate to subordinate this assignment to any subsequent assignment.  The exercise by Lender of any of its rights or remedies under this Section 28(b) shall not be deemed or construed to make Lender a mortgagee-in-possession.

(c)    **Appointment of a Receiver, Etc.**  If Lender gives notice of default to Borrower, to the extent permitted by Applicable Law, Lender shall be entitled to have a receiver, trustee,

liquidator or conservator of the Property appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security for the debt and without regard to the solvency of Borrower, any Guarantor or indemnitor with respect to the debt or any Person otherwise liable for the payment of the debt or any part thereof, it being agreed that Lender shall be entitled to appointment of such receiver, trustee, liquidator or conservator as a matter of right.

(d)     **Collection of Rents**.  If Lender gives notice of default to Borrower:  (i) all Rents received by Borrower(whether in cash or by check or other electronic means) shall be held by Borrower as trustee for the benefit of Lender only, and Borrower shall deliver all such rents to Lender within five (5) days of receipt thereof for application to the sums secured by this Security Instrument and(ii) Lender shall be entitled to contact each Tenant of the Property and demand payment of, collect and receive all of the Rents of the Property.  Lender, Lender's agents or any receiver, trustee, liquidator or conservator of the Property shall be liable to account for only those Rents actually received.

(e)     **Lender Expenses**.  If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any unreimbursed funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(f)     **No Prior Assignment**.  Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this Section 28.

(g)     **Possession, Control and Maintenance of the Property**.  To the extent permitted by Applicable Law, Lender, or Lender's agents or a judicially appointed receiver, trustee, liquidator or conservator shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower.  However, to the extent permitted by Applicable Law, Lender, or Lender's agents or a judicially appointed receiver, trustee, liquidator or conservator may do so at any time after a default occurs.  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of Rents of the Property shall terminate when all the sums secured by this Security Instrument are paid in full.

(h) **Application of Amounts Collected**.  Lender or a judicially appointed receiver, trustee, liquidator or conservator may apply Rents and all other amounts collected with respect to the Property, including amounts collected in connection with the exercise of remedies pursuant to Section 22, to the payment of principal, interest and other amounts due under the Loan Documents as provided in Section 2.

**29. Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**30. Lease of the Property.**  Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument.  The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon

SLP SECURITY INSTRUMENT – MISSOURI
AD0920                                                                                    *(page 21 of 24 pages)*

default or to the purchaser of the Property at the foreclosure sale.

**31. Homestead Exemption.** Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**32. Notice. Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

[Signature Page Follows]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

HUDSON & MCKEE REAL ESTATE, LLC,
A MISSOURI LIMITED LIABILITY COMPANY

_____                    _____ (Seal)
                                                   MAUREEN WOOTEN, MANAGING MEMBER    - Borrower


_____                    _____ (Seal)
                                                                            - Borrower


**BORROWER ACKNOWLEDGES THAT THE PURPOSE OF THE LOAN CONTEMPLATED HEREBY IS FOR BUSINESS AND/OR COMMERCIAL PURPOSES ONLY AND THE LOAN IS NOT FOR PERSONAL, FAMILY OR HOUSEHOLD USE.**

Borrower's Initials: _MW_

**BORROWER FURTHER ACKNOWLEDGES THAT THIS SECURITY INSTRUMENT PROHIBITS THE LEASING OF THE PROPERTY TO AND OCCUPANCY BY (1) BORROWER, (2) ANY AFFILIATE OF BORROWER, (3) ANY HOLDER OF A DIRECT OR INDIRECT EQUITY INTEREST IN BORROWER OR ANY SUCH AFFILIATE, (4) ANY OFFICER, DIRECTOR, EXECUTIVE EMPLOYEE OR MANAGER OF ANY PERSON OR ENTITY DESCRIBED IN THE FOREGOING CLAUSES (1) – (3) OR (5) ANY FAMILY MEMBER (INCLUDING SPOUSE, SIBLINGS, ANCESTORS AND LINEAL DESCENDANTS) OF ANY PERSON OR ENTITY DESCRIBED IN THE FOREGOING CLAUSES (1) – (4).**

Borrower's Initials: _MW_

_____[Space Below This Line for Acknowledgment]_____

——————————— [Space Below This Line For Acknowledgment] ———————————

State of _MISSOURI_____

County (and/or City) of __St. Louis_____

On this __13__ day of __May , 2022_____ , before me, the undersigned notary, personally

appeared __Maureen Wooten, Managing Member__
__for Hudson & Makee Real Estate, LLC__

_____

_____

_____

personally known to me/proved to me through identification documents, which were _____

___drivers license_____

(description of identification)

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he)(she)
signed it voluntarily for its stated purpose.

JACOB HALTER
My Commission Expires
August 6, 2023
St. Louis County
Commission #15635889

NOTARY SEAL
STATE OF MISSOURI

_____
Notary's Signature

_____
Jacob Halter
Typed or Printed Name

(Seal)

**SLP SECURITY INSTRUMENT – MISSOURI**
AD0920

# EXHIBIT "A" LEGAL DESCRIPTION

**PARCEL 1:**
**3147-3149 BRANTNER PLACE, ST. LOUIS, MO 63106**

A parcel of ground being part of Lots 35, 36, 37, and 38 in Block 2 of Easton's Subdivision and in Block 1985 of the City of St. Louis, Missouri, said parcel being more particularly described as follows: Beginning at a point in the Northern line of Brantner Place, 50 feet wide, distant 1.04 feet West of its intersection with the Eastern line of said Lot 36; thence Westwardly 61.04 feet along the Northern line of said Brantner Place, to a point distant 3.62 feet West of its intersection with the Eastern line of said Lot 38; thence Northwardly 86.20 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 26.19 feet along a line parallel to the Northern line of said Brantner Place; thence Northwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner place, to the Southern line of an alley, 15 feet wide; thence Eastwardly 49.38 feet along the Southern line of said alley; thence Southwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place; thence Westwardly 14.53 feet along a line parallel to the Northern line of said Brantner Place; thence Southwardly 86.03 feet along a line perpendicular to the Northern line of said Brantner Place, to the Northern line of said Brantner Place and the point of beginning.

APN#: 19850003850

**PARCEL 2:**
**3141-3143 BRANTNER PLACE, ST. LOUIS, MO 63106**

A parcel of ground being part of Lots 34, 35, and 36 in Block 2 of Easton's Subdivision, and in Block 1985 of the City of St. Louis, Missouri, said parcel being more particularly described as follows: Beginning at a point of intersection of the Northern line of Brantner Place, 50 feet wide, with the Eastern line of said Lot 34; thence Westwardly 61.04 feet along the Northern line of Brantner Place, to a point distant 1.04 feet West of its intersection with the Eastern line of said Lot 36; thence Northwardly 86.03 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 14.53 feet along a line parallel to the Northern line of said Brantner place; thence Northwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place to the Southern line of an alley, 15 feet wide; thence Eastwardly 47.60 feet along the Southern line of said alley, to the Eastern line of said Lot 34; thence Southwardly 100.88 feet along the Eastern line of said Lot 34, to the Northern line of said Brantner Place and the point of beginning.

APN#: 19850003550

**PARCEL 3:**
**3129-3135 BRANTNER PLACE, ST. LOUIS, MO 63106**

A parcel of ground being part of Lots 30, 31, and 32 in Block 2 of Easton's Subdivision, and in Block 1985 of the City of St. Louis, Missouri, said parcel being more particularly described as follows: Beginning at a point in the Northern line of Brantner Place, 50 feet wide, distant 2.58 feet East of its intersection with the Western line of said Lot 30; thence Westwardly 61.04 feet along the Northern line of said Brantner Place to the Western line of said Lot 32; thence Northwardly 100.77 feet along the Western line of said Lot 32, to the Southern line of an alley, 15 feet wide; thence Eastwardly 53.27 feet along the Southern line of said alley; thence Southwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 6.93 feet along a line parallel to the Northern line of said Brantner Place; thence Southwardly 85.58 feet along a line perpendicular to the Northern line of said Brantner Place to the Northern line of said Brantner Place and the point of beginning.

APN#: 19850003250

**PARCEL 4**:
**3125-3127 BRANTNER PLACE, ST. LOUIS, MO 63106**

A parcel of ground being part of Lots 28, 29, 30 and 31, in Block 2, of Easton's Subdivision, and in Block 1985 of the City of St. Louis, Missouri, said parcel being more particularly described as follows: Beginning at a point in the Northern line of Brantner Place, 50 feet wide, distant 3.62 feet East of its intersection with the Western line of said Lot 28; thence Westwardly 61.04 feet along the Northern line of said Brantner Place, to a point distant 2.58 feet East of its intersection with the Western line of said Lot 30; thence Northwardly 85.58 feet along a line perpendicular to the Northern line of said Brantner Place; thence Westwardly 6.93 feet along a line parallel to the Northern line of said Brantner Place; thence Northwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place, to the Southern line of an alley, 15 feet wide; thence Eastwardly 51.86 feet along the Southern line of said alley; thence Southwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 12.13 feet along a line parallel to the Northern line of said Brantner Place; thence Southwardly 9.39 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 3.98 feet along a line parallel to the Northern line of said Brantner Place; thence Southwardly 76.02 feet along a line perpendicular to the Northern line of said Brantner Place, to the northern line of said Brantner Place and the point of beginning.

APN#: 19850003050

**PARCEL 5**:
**3121-3123 BRANTNER PLACE, ST. LOUIS, MO 63106**

A parcel of ground being part of Lots 26, 27, 28 and 29, in Block 2 of Easton's Subdivision, and in Block 1985 of the City of St. Louis, Missouri, said parcel being more particularly described as follows: Beginning at a point in the Northern line of Brantner Place, 50 feet wide, distant 4.66 feet East of its intersection with the Western line of said Lot 26; thence Westwardly 61.04 feet along the Northern line of said Brantner Place, to a point distant 3.62 feet East of its intersection with the Western line of said Lot 28; thence Northwardly 76.02 feet along a line perpendicular to the Northern line of said Brantner Place; thence Westwardly 3.98 feet along a line parallel to the Northern line of said Brantner Place; thence Northwardly 9.39 feet along a line perpendicular to the Northern line of said Brantner Place; thence Westwardly 12.13 feet along a line parallel to the Northern line of said Brantner Place; thence Northwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place; to the Southern line of an alley, 15 feet wide, thence Eastwardly 52.65 feet along the Southern line of said alley; thence Southwardly 15.00 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 18.50 feet along a line parallel to the Northern line of said Brantner Place; thence Southwardly 5.75 feet along a line perpendicular to the Northern line of said Brantner Place; thence Eastwardly 6.00 feet along a line parallel with the Northern line of said Brantner Place; thence Southwardly 79.48 feet along a line perpendicular to the Northern line of said Brantner Place, to the Northern line of Brantner Place and the point of beginning.

APN#: 19850002750

**PARCEL 6**:
**2900-2902 SHERIDAN AVENUE, ST. LOUIS, MO 63106**

The Northern 96 feet 6 inches of Lot 2 in Block 1 of North Stoddard Addition and in Block 1004 of the City of St. Louis, Missouri, fronting 32 feet, more or less, on the South line of Sheridan Avenue by a depth Southwardly of 96 feet 6 inches, to the rear of said parcel, having a width thereon of 32 feet 2 inches, more or less; bounded East by Glasgow Avenue.

APN#: 10040001750

2

**PARCEL 7**:
**3127 SHERIDAN AVENUE, ST. LOUIS, MO 63106**

Adjusted Lot 30 of "Adjusted Lots 29, 20, and 31, Block 3 Per the Boundary Adjustment Plat of Lots 29, 30, and 31, Block 3, Easton's Subdivision in City Block 1984, City of St. Louis, State of Missouri" according to the plat thereof recorded in Book 02112008 Page 0171 of the City of St. Louis Records.

APN#: 19840003650


**PARCEL 8**:
**2826 SHERIDAN AVENUE, ST. LOUIS, MO 63106**

A parcel of ground being all of Lots 5, 6 and 7 in Block 2 of "North Stoddard Addition" and in Block 1003 of the City of St. Louis, Missouri; said parcel being more particularly described as follows: beginning at the point of interseci1on of the Southern line of Sheridan Avenue, 70 feet wide, with the Western line of said Lot 5; thence Eastwardly 75.00 feet along the Southern line of said Sheridan Avenue to the Eastern line of Lot 7; thence Southwardly 140.00 feet along the Eastern line of said Lot 7 to the Northern line of an alley, 15 feet wide; thence Westwardly 75.00 feet along the Northern line of said alley to the Western line of said Lot 5; thence Northwardly 140.00 feet along the Western line of said Lot 5 to the Southern line of said Sheridan Avenue and the point of beginning; according to a survey by Pitzman's Co. of Surveyor's & Engineers, dated March 21, 1977.

APN#: 10030000200