UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| In re: ) | Case No.: 23-43539 |
| ) | Honorable Brian C. Walsh |
| **HUDSON & MCKEE REAL ESTATE** ) | Chapter 11 Proceeding |
| **LLC,** ) | |
| ) | **MOTION FOR ORDER** |
| **EIN – 83-4384182** ) | **AUTHORIZING POST-PETITION** |
| Debtor. ) | **FINANCING PURSUANT TO 11 U.S.C.** |
| ) | **§ 364(b)** |
| ) | |
| ) | Hearing Date: October 17, 2023 |
| ) | Hearing Time: 10:00 am |
| ) | Location:  Courtroom 5 North |
| ) | |
| ) | Spencer P. Desai, Esq. |
| ) | The Desai Law Firm, LLC |
| ) | 13321 North Outer Forty Road, Suite 300 |
| ) | St. Louis, Missouri 63017 |
| ) | (314) 666-9781 |
| ) | spd@desailawfirmllc.com |
| ) | |

**MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN UNSECURED POST-PETITION FINANCING PURSUANT TO § 364(b)**

COMES NOW Hudson & McKee Real Estate LLC ("Debtor" or "Movant"), by and through counsel, and files this *Motion for Order Authorizing Debtor to Obtain Unsecured Post-Petition Financing Pursuant to §364(b) of the Bankruptcy Code* (the "Motion").  In support of the Motion, the Debtor states to the as follows:

**BACKGROUND**

1. On October 1, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Missouri.

1

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to manage its assets as a debtor-in-possession. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established in this Chapter 11 case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(d). No prior request has been made to this Court or any other court for the relief sought herein.

4. Debtor brings this Motion pursuant to 11 U.S.C. §364(b).

5. Debtor owns thirteen parcels of residential rental real estate in the City of St. Louis ("Real Estate"). The Real Estate contains 25 units of which 17 are currently occupied. Six (6) of the occupied units are performing leases.

6. The Debtor acquired the Real Estate as part of a larger acquisition of a redevelopment portfolio. The Debtor's redevelopment efforts were severely hampered by the COVID-19 pandemic. The residual effects of the pandemic are being felt by the Debtor today as it struggles to evict non-paying tenants who were able to remain in units, without paying rent, due to various pandemic relating moratoriums. The Debtor was under the belief that various state and federal programs would reimburse the Debtor for the past due rents. However, the promises of these program payments have not been fulfilled.

7. The negative cash flow caused the Debtor to fall behind with its secured lender Park Place Finance, LLC. Unfortunately, the Debtor's efforts to reach a forbearance with the lender were unsuccessful.

8.    Debtor filed this proceeding as a direct result of a pending foreclosure scheduled for October 3, 2023.

**THE DEBTOR'S NEED FOR UNSECURED POST-PETITION FINANCING**

9.    The Debtor is proceeding with evictions and post-eviction repairs of the non-revenue generating units. The Debtor expects to have the eviction process largely complete in the next four (4) months. After an eviction, it takes approximately two (2) months to repair and refurbish a unit to rentable condition. The cost per unit is approximately $10,000.00 to make the unit ready for occupancy. Demand for units is strong and the Debtor anticipates leasing the units shortly after they are brought online.

10.    Due to the current occupancy rate, the Debtor operates at a loss. The Debtor has relied on contributions from the owners to satisfy these shortfalls.

13.    McKee Investments LLC is the management company for the Debtor ("McKee Investments"). McKee Investments is owned by Raymond McKee, the majority owner of the Debtor. McKee Investments is willing to extend unsecured post-petition financing to Debtor under 11 U.S.C. §364(b).

14.    The McKee Investments proposed loan contains the following terms:

    a.    The Debtor is authorized to borrow up to $150,000.00 from McKee Investments[1];

    c.    No principal payments are due during the pendency of this case;

    d.    The loan shall be made interest free;

    e.    Principal balance shall be amortized and paid pursuant to the terms of the Debtor's plan;

---

[1] Prior to the Petition Date, McKee Investments paid a $20,000 retainer to Debtor's counsel which shall constitute a draw against the $150,000.00 line of credit.

3

Copies of the proposed loan documents are attached hereto as Exhibit A and incorporated herein as if more fully set forth

15. The proposed loan will be used for payment of various expenses detailed in the Debtor's Motion to Authorize Use of Cash Collateral. The Debtor anticipates an average monthly draw of approximately $30,000.00 for expenses directly related to the Real Estate.

16. Ultimately, the proposed loan will assist the Debtor in exiting bankruptcy and increase the Debtor's business enterprise value for creditors.

17. The proposed loan terms and well below market and represent the genuine interest of a member of the Debtor in completing the refurbishment of the Real Estate.

18. The Court's approval of the McKee Investments loan will facilitate the Debtor's exit from bankruptcy and preserve the Debtor's ongoing business enterprise. No harm or prejudice will result to any party from the Debtor's proposed post-petition financing.

WHEREFORE, Debtor respectfully prays this Court make and enter its Order:

(a) authorizing the Debtor to obtain unsecured post-petition financing with McKee Investments LLC in an amount up to $150,000.00 in accordance with the terms set forth in the Motion;

(b) Allow any amounts drawn under the loan from McKee Investments to constitute an administrative expense pursuant to 11 U.S.C. §503(b)(1);

(c) for such other and further as the Court deems just and proper.

Respectfully submitted,

THE DESAI LAW FIRM, LLC

By: */s/ Spencer P. Desai*
 Spencer P. Desai, #39877
 13321 North Outer Forty Road, Suite 300
 St. Louis, MO 63017
 Telephone: (314) 666-9781
 Facsimile: (314) 448-4320
 spd@desailawfirmllc.com

*PROPOSED COUNSEL FOR THE DEBTOR*

5

# EXHIBIT A

# PROMISSORY NOTE
# FOR REVOLVING LINE OF CREDIT

$150,000.00

St. Louis, Missouri
October 17, 2023

**THIS PROMISSORY NOTE FOR REVOLVING LINE OF CREDIT** (this "Note") is entered into by and between the Borrower (as defined herein below) and the Lender (as defined herein below) as of the date hereof (Lender and Borrower are also individually referred to herein as "Party" and collectively referred to herein as the "Parties").

On or before the Maturity Date, for value received, the undersigned **HUDSON & MCKEE REAL ESTATE LLC**, a Missouri limited liability company ("Borrower"), promises to pay to the order of **MCKEE INVESTMENTS LLC** ("Lender"), a Missouri limited liability company, whose office address is 3155 Brantner Street, St. Louis, Missouri 63106, or at such other place as may be designated in writing by the holder hereof, in lawful money of the United States of America in immediately available funds, the current principal sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00), together with interest on said sum at the rate or rates hereinafter specified.

1. **Revolving Loan Limit.** Subject to approval by Lender, Borrower shall have the right, from time to time, prior to the Maturity Date (as hereinafter defined), to borrow and, upon repayment, re-borrow from Lender amounts not at any one time in the aggregate principal balance exceeding the sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) (the "Revolving Loan" or "Loan"), as due to the Lender under the terms of this Promissory Note for Revolving Line of Credit (the "Note").

2. **Requests for Disbursement Under Revolving Loan.** Borrower must, in any and all events, submit to Lender a written request for a disbursement from the Revolving Loan. So long as Borrower is not if default, Lender shall not unreasonably deny the request.

3. **Payments of Principal and Interest; Maturity Date; Interest; Reductions to Unrestricted Funds and Overall Availability; Prepayments.** Borrower shall repay the principal amount of the Revolving Loan and any interest accrued and unpaid thereon immediately and without notice or demand upon the earlier of: (i) the Maturity Date (as defined herein below); or (ii) on the occurrence of an Event of Default (as defined herein below).

Interest shall accrue on the aggregate outstanding principal amount of the Revolving Loan from time to time. Interest shall be calculated by multiplying the outstanding daily balance of Revolving Loan for each day during the immediately preceding calendar month by the Loan Interest Rate and dividing by three hundred sixty (360) days. The "Loan Interest Rate" shall be zero percent (0.0%).

The Maturity Date for this Note is October 1, 2024 (the "Maturity Date"). On the Maturity Date, the Borrower shall pay all outstanding accrued interest and principal to Lender.

Prepayments shall be applied to the principal amount of the Loan unless an Event of Default has occurred, in which case Lender may apply such prepayments in its discretion. There shall be no prepayment penalty.

4. Default Interest Rate. The Revolving Loan shall bear interest after maturity, whether by reason of acceleration due to the occurrence of an Event of Default or otherwise at a per annum rate of Eight percent (8%) per annum (the "Default Rate").

5. Other Agreements Between the Parties. Any and all other agreements between Borrower and Lender shall remain in full force and effect unless specifically modified by the terms of this Note.

6. Authority and Enforceability. Borrower shall obtain approval for the Loan from the United States Bankruptcy Court for the Eastern District of Missouri. Borrower represents and warrants to Lender that the execution of this Agreement, the delivery by Borrower to Lender of all monies, items and documents provided for herein, Borrower's performance hereof and the transactions contemplated hereby have been duly authorized by the requisite action on the part of Borrower.

This Agreement constitutes valid and binding obligations of Borrower and is enforceable against Borrower in accordance with its terms.

Borrower warrants, represents and acknowledges that this Note and the Loan Documents are made for commercial purposes only and not for residential or personal use.

7. Default; Event of Default. An "Event of Default" shall be and include (a) the failure of the Borrower to abide by any of the terms of this Note; (b) a motion to appoint a trustee or to convert the Borrower's pending chapter 11 case to a chapter 7 proceeding. Should Borrower fail to make any payment hereon on the date on which it shall fall due, and Borrower continues to be in default in making said payment for a period of ten (10) days after said payment becomes due, or should any default or Event of Default, as defined herein, be made in the performance of any of the agreements, conditions, covenants, provisions, or stipulations contained in this Note or any other documents securing or executed in connection with this Note, after the giving of written notice of such default or Event of Default by the holder hereof, or, if such failure is incapable of being cured within said thirty (30) day period, Borrower fails to commence to cure said failure within said thirty (30) day period or thereafter fails to diligently prosecute said cure, then the holder of this Note, at its option and without further notice or demand, may declare immediately due and payable the entire unpaid balance of principal due under this Note, together with all accrued interest thereon and all other sums due from Borrower and after the date of such default or Event of Default this Note shall bear interest at the Default Rate. In such case, the holder of this Note may also recover all costs of suit and other expenses in connection with efforts to collect any of the aforesaid amounts, together with reasonable attorneys' fees (including attorneys' fees for representation in proceedings under the Bankruptcy Code), regardless of whether litigation is commenced, together with interest on any judgment obtained by the holder of this Note at the Default Rate, including interest at the Default Rate from and after the date of any such default or Event of Default until actual payment is made to the holder of this Note of the full amount due

such holder.  Notwithstanding anything to the contrary contained herein, no notices of defaults or Events of Default shall be required to be given following the Maturity Date.

8. Presentment; Demand for Payment; Notice.  Presentment and demand for payment, notice of non-payment, protest, protest of non-payment, notice of dishonor, and any and all lack of diligence and suit are hereby waived by all parties liable hereon.  All endorsers, guarantors, sureties, or other persons who may now or hereafter be liable for the payment of this Note by endorsing, guaranteeing, or assuming this Note consent to all of the terms and conditions herein contained and agree that this Note may be modified, extended, or renewed in whole or in part, without notice, including without limitation by: (a) the impairment, substitution, exchange or release at any time or times of all or any part of any security or collateral security now or hereafter furnished; (b) the release of or the impairment of the right of recourse against the undersigned or any endorser, guarantor, surety, or any other person now or hereafter liable hereon; (c) the substitution of renewal or extension notes for this Note; (d) the modification of any terms hereof, or other agreement now or hereafter given in connection with or as security for this Note; and (e) any change in the rate of interest hereon or the imposition of any fees whether authorized under this Note, the Loan Documents or any other agreement now or hereafter given in connection with or as security for this Note.

9. Good Standing. Borrower represents and warrants to Lender that Borrower is a validly formed limited liability company in good standing under the laws of the State of Missouri.

10. No Defenses, Set-offs or Counterclaims. Borrower represents and warrants to Lender that it has no defenses, set-offs, or counterclaims of any kind or nature whatsoever against Lender with respect to the Loan Documents or obligations thereunder, or any action previously taken or not taken by Lender with respect thereto or with respect to any security interest, encumbrance, lien, or collateral in connection therewith to secure the outstanding indebtedness under the Loan.

11. Amendment. This Agreement shall not be amended or modified in any way except by an instrument in writing executed by each of the parties hereto.

12. Choice of Law. This Agreement shall be governed by and shall be construed in accordance with the laws of the state of Missouri.

13. Third Party Beneficiaries. This Agreement is entered into for the exclusive benefit of the parties hereto, and no other party will derive any rights or benefits from this Agreement.

14. Binding Effect. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors, legal representatives and assigns.

15. Multiple Counterparts. This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

16. Further Assurances. The parties hereto agree that upon the reasonable request of the other party to this Agreement, each such party will execute and deliver to the requesting party

such other additional instruments and documents, or perform or cause to be performed such other and further acts and things, as may be reasonably necessary to more fully consummate the transactions as set forth in this Agreement provided, however, that performance by either party under this paragraph shall not create any new liability or obligation on the performing party whatsoever.

17. <u>Time is of the Essence</u>.  The Borrower acknowledges that time is of the essence of this Note.

18. <u>Waiver</u>.  Any failure by any holder hereof to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any other time and from time to time thereafter.

19. <u>Release</u>. The following is added pursuant to Section 432.047 R.S.Mo.  As used below "borrower(s)" shall mean Borrower and "creditor" shall mean Lender:

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER) AND US (LENDER) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

Borrower acknowledges that there are no other agreements between or among Lender and Borrower, oral or written, concerning the subject matter of the Loan Documents, and that all prior agreements concerning the same subject matter, are merged into the Loan Documents and thereby extinguished.

**IN WITNESS WHEREOF,** the undersigned have executed this instrument as of the date aforesaid.

**BORROWER:**


**Hudson & McKee LLC**
a Missouri Limited Liability Company



By: _____
    Raymond McKee, Manager

4